IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

KENNETH R. SADLER,                    *

        Plaintiff,                    *

vs.                                   *
                                               CASE NO.  3:10-CV-26 (CDL)
FRANKLIN COUNTY SCHOOL                *
DISTRICT,
                                      *
        Defendant.
                                      *
_____

O R D E R

Plaintiff Kenneth R. Sadler ("Sadler") claims that his
former employer, Defendant Franklin County School District
("FCSD"), terminated his employment because of his age, in
violation of the Age Discrimination in Employment Act,
29 U.S.C. § 621 *et seq.* ("ADEA").  In its presently pending
Motion for Summary Judgment (ECF No. 11), FCSD argues that
Sadler is collaterally estopped from pursuing this claim because
the issue was previously decided in the state court action
arising from Sadler's termination.  For the following reasons,
the Court grants FCSD's motion.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P.  56(a).  In determining whether a *genuine* dispute of

*material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Viewed in light most favorable to Sadler, the facts are as follows.

## I. Overview of Sadler's Employment with FCSD

Sadler has worked as a teacher, assistant principal, and principal during his career in education. Sadler Dep. 18:14-19:25, 24:4-16, ECF No. 18-1. He retired from his job as a high school principal in 1997, but after spending several years in retirement, Sadler accepted a job with FCSD as an assistant principal at Franklin County Middle School ("FCMS" or "middle school") in 2001. As an assistant principal at FCMS, Sadler primarily handled discipline, with additional responsibility for bus and building maintenance. Sadler also assisted with academic performance and teacher instruction by observing teachers in their classrooms and making sure that students stayed on task and that the teachers were prepared to give

instruction. *Id.* at 55:15-56:9. Sadler's yearly evaluations reveal that he was not responsible for curriculum, and in some years he was not assigned to the areas of student performance, organizational setting, comprehensive improvement plan, or staff performance. *See* Sadler Dep. Ex. 5, Georgia Leadership Evaluation Instrument: Annual Evaluation Report, ECF No. 18-9. Sadler helped with the SACS plan—an accreditation program for school systems—the year the middle school was under review. Floyd Dep. 16:25-17:4, ECF No. 23. He also attended meetings on school improvement, and although Sadler was not a formal member of the team that created the school improvement plan, he did make verbal contributions and suggestions regarding how to improve the school plan. Sadler Dep. 71:12-72:9. Sadler helped review student test results. Floyd Dep. 17:13-18:4. During his employment with FCSD, Sadler also attended conferences aimed at professional learning development. Sadler Dep. 43:20-44:5; Sadler Dep. Ex. 4, Franklin County Schools SDU Credit Forms, ECF No. 18-8.

## II. Sadler's Transfer to ISS

For the 2006-2007 school year, FCMS failed to meet the adequate yearly progress requirements ("AYP") of the No Child Left Behind Act of 2001, 20 U.S.C. § 6301 *et seq.*, for the second year in a row. As a result, the school was in jeopardy of being reconstituted by removing the principal and faculty.

Def.'s Mot. for Summ. J. Attach. 5, O'Dell Aff. ¶ 3, ECF No. 11-5. FCSD's Superintendent at the time, Frederic Ayer ("Ayer"), determined that changes needed to be made at FCMS in order to improve performance. Def.'s Mot. for Summ. J. Attach. 3, Ayer Aff. ¶ 4, ECF No. 11-3. After discussing the matter with the principal of the middle school, Lucy Floyd ("Floyd"), Ayer concluded that administrators at the school needed to be knowledgeable about curriculum and instruction. *Id.* ¶ 5. Floyd felt that Sadler's strength was student discipline, but he lacked the "skill set" necessary to help the school improve in providing instruction to students. Floyd Dep. 35:3-11.

Given Sadler's focus on discipline throughout his career, Ayer thought that Sadler did not have sufficient knowledge of curriculum and instruction to assist the management team in meeting AYP. Ayer Aff. ¶ 5. Ayer asserts that on the basis of this belief, he proposed to the Franklin County Board of Education ("Local Board") that Sadler be transferred to the In School Suspension ("ISS") position at Franklin County High School ("FCHS" or "high school"). *Id.* Ayer suggested to the Local Board that Sadler receive the same compensation that he did as an assistant principal, although his primary responsibilities would not be administrative. *Id.* Ayer planned for Sadler to help the two assistant principals at FCHS with administrative duties when they could not cover them because of

their coaching responsibilities. *Id.* The Local Board indicated at the meeting that it would agree to the transfer but did not vote on the issue at that time. *Id.*

Sadler claims, however, that when Ayer met with him regarding the transfer proposal, Ayer did not mention his lack of administrative experience in the areas of curriculum and instruction as the reason for the transfer. According to Sadler, Ayer told him that he was being transferred "since you're old, the [middle] school is large, and your pay will remain the same until you retire in three-and-a-half years." Sadler Dep. 91:6-8; *see also id.* 92:19-23. At the time of the proposed transfer, Sadler was 70 years old. Sadler told Ayer that he accepted the transfer as long as FCSD paid him the same amount and allowed him to keep the position until he retired. *Id.* at 96:20-97:5. Ayer claims that at the meeting Sadler "mentioned, as he had before, that the new middle school building was large and he was having some difficulty getting around it." Ayer Aff. ¶ 6. He denies saying anything about Sadler being old or anything about his age. *Id.*

After his meeting with Sadler, Ayer told Floyd that she could begin looking for Sadler's replacement as assistant principal at FCMS. *Id.* ¶ 7. In March 2007, Ayer presented his recommendations to the Local Board for teacher and administrator contract renewals, and the Local Board approved the

recommendations.   Ayer  Aff.  Ex.  A,  Franklin  County  Schools
Minutes ¶ I, Mar. 8, 2007.  The list of renewals from FCMS
included Sadler's name as an assistant principal.  *Id.* at DEF
0340.  Shortly after that, Ayer left his job to take a position
in  Alabama.    After  Ayer  left  but  before  FCSD's  new
Superintendent, Ruth O'Dell ("O'Dell") began, Floyd recommended
Jason Macomson ("Macomson") as Sadler's replacement.  Floyd Dep.
Ex. 7, Franklin County Schools Recommendation to Superintendent,
Apr. 11, 2007.  Macomson was 34 years old.  The Board approved
the hiring of Macomson to replace Sadler.  O'Dell Dep. Ex. 17,
Franklin County Schools Minutes ¶ I, May 16, 2007, ECF No. 22 at
117.

## III. FCSD's Budget Problems and Elimination of the ISS Teaching Position

Shortly  after  O'Dell  assumed  her  new  position  as
Superintendent at FCSD, she discovered that the district faced a
severe budget crisis.   The Board instructed O'Dell to review
different options for cutting the budget.  O'Dell Dep. Ex. 17,
Franklin County Schools Minutes ¶ G, May 16, 2007, ECF No. 22 at
116.   Sadler signed and returned his contract for the ISS
position on June 5, 2007.[1]  On June 7, 2007, O'Dell presented

---

[1] Sadler previously signed a contract on May 22, 2007 accepting a
position as assistant principal at FCHS.  Sadler Dep. 142:7-14.
Sadler subsequently signed the contract assigning him to the ISS
position and reflecting the arrangement initially proposed by Ayer.
Sadler Dep. 143:23-144:11, 147:16-19; Sadler Dep. Ex. 10, Contract of
Employment, June 5, 2007, ECF No. 18-15.

6

several options for reducing the deficit, including a reduction-in-force ("RIF") plan. As part of the RIF package, O'Dell proposed eliminating the requirement that the ISS position be filled by a certificated teacher because the State Board of Education rules did not require ISS to be staffed with a certificated employee. O'Dell Aff. ¶ 16. Sadler's salary in the ISS position would have been $73,614, with an additional $24,278 in retirement and health insurance benefits, totaling $97,892. *Id.* ¶ 17. In contrast, filling the ISS position with a paraprofessional who did not have a teaching certificate would cost FCSD $25,129. *Id.*

O'Dell asserts that she considered moving Sadler to another position once she decided to recommend the RIF package including elimination of the ISS certificated position. O'Dell Aff. ¶ 19. O'Dell could have moved Sadler to an assistant principal position at either the high school or the middle school. O'Dell Dep. 50:10-21. FCHS had an opening for an assistant principal, but O'Dell concluded that Sadler should not be transferred to that position because of his lack of instructional administrative skills. O'Dell Aff. ¶ 19. The Human Resource Director informed O'Dell that Sadler was not eligible to be certificated for a position other than one requiring a leadership certificate. *Id.* Ultimately, O'Dell decided to offer Sadler the ISS position at the paraprofessional pay rate.

On June 8, 2007, O'Dell met with Sadler to inform him of her recommendation to eliminate the certification requirement for the ISS position and the resulting reduction in his salary. O'Dell Dep. 57:12-58:20. Sadler does not recall whether O'Dell discussed any effort that she made to reassign him to another position or any of the budget issues leading to the decision. Sadler Dep. 150:25-153:24. All he remembers from the meeting was that O'Dell told him that his salary would be approximately $19,000. *Id.* at 151:6-24. Sadler declined the paraprofessional ISS position.

The Local Board held a meeting on June 14, 2007 and considered O'Dell's budget proposals. In addition to the RIF—which implicated several FCSD employees—her proposed reductions included the elimination of new school buses, elimination of dental insurance for employees, and cancelling optional field trips. O'Dell Dep. Ex. 11, Franklin County Schools Minutes ¶ H, June 14, 2007, ECF No. 22 at 97-99. She presented five different options consisting of various combinations of expense reductions and millage increases. *Id.*; O'Dell Dep. Ex. 3, Budget Development PowerPoint Presentation, June 14, 2007, ECF No. 22 at 7-8. The Local Board approved a package that included a RIF eliminating several positions, including the teaching certification requirement for the ISS position. O'Dell Dep. Ex. 11, Franklin County Schools Minutes ¶ H, June 14, 2007, ECF No.

22 at 97-98. The Local Board also approved the transfer of another administrator—whose position was eliminated in the RIF—to and "associate principal" position at FCHS, and it approved several new hires. *Id.* ¶ I, ECF No. 22 at 100.

Sadler's counsel sent a letter to O'Dell asserting Sadler had been discriminated against on the basis of age and requesting an investigation. O'Dell Dep. Ex. 18, Letter from M. Daniel to R. O'Dell, June 22, 2007, ECF No. 22 at 118-19. O'Dell did not conduct an investigation because, according to O'Dell, she made the recommendation to eliminate the ISS position and would have been investigating her own conduct. O'Dell Dep. Ex. 9, *In re Sadler: Hr'g Before Franklin Cnty. Bd. of Educ.* 89:18-25, Aug. 27, 2007 [hereinafter Fair Dismissal Act Hr'g Tr.], ECF No. 22 at 39. O'Dell sent Sadler a letter stating that as a result of his refusal to accept the paraprofessional ISS position, she would seek termination of his employment under the Fair Dismissal Act, O.C.G.A. § 20-2-940 ("Fair Dismissal Act"). O'Dell Dep. Ex. 20, Letter from R. O'Dell to K. Sadler, July 2, 2007, ECF No. 22 at 121. The letter identified the specific grounds under which O'Dell was seeking Sadler's termination, *see id.*, including O.C.G.A. § 20-2-940(a)(6), which provides for termination in order to "reduce staff due to loss of students or cancellation of programs," and O.C.G.A. § 20-2-940(a)(8), allowing

termination for "[a]ny other good and sufficient cause," O.C.G.A. § 20-2-940(a)(6) & (8). After O'Dell sent the letter informing Sadler of her initiation of the termination proceedings, she offered Sadler a co-teaching position with special education students. O'Dell Dep. 71:3-72:3. Sadler rejected O'Dell's offer.

## IV. Sadler's Fair Dismissal Act Hearing and Subsequent Appeals to the State Board of Education and Franklin County Superior Court

Pursuant to the Fair Dismissal Act, the Local Board conducted a hearing regarding Sadler's termination. *See generally* Fair Dismissal Act Hr'g Tr. At the hearing, Sadler argued that the proposed termination of his contract was the result of age discrimination. The Local Board found cause to terminate Sadler's employment contract, concluding that the termination was lawful. Fair Dismissal Act Hearing 199:6-16, ECF No. 22 at 66.

Sadler appealed the Local Board's decision to the State Board of Education ("State Board"). Sadler argued that he was terminated because of his age and that O'Dell failed to follow FCSD's RIF policy. Def.'s Mot. for Summ. J. Ex. A, Decision, *Sadler v. Franklin Cnty. Bd. of Educ.* 1-2, Case No. 2008-20, Feb. 15, 2008, ECF No. 11-7. The State Board noted that Sadler made the same claims at the Fair Dismissal Act Hearing. *Id.* The State Board sustained the Local Board's decision. *Id.* at 3.

In its written decision affirming Sadler's termination, the State Board specifically found that the record did not support his age discrimination claim. *Id.* at 2.

Sadler further appealed his termination to the Franklin County Superior Court. The superior court reviewed the Local Board's decision under the "any evidence" rule, which requires the court to affirm the decision of the Local Board if there is any evidence in the record to support the decision. Def.'s Mot. for Summ. J. Ex. B, Order Affirming Decision of the Bd. of Educ., *Sadler v. Franklin Cnty. Bd. of Educ.*, Civil Action 08-FV-0228, ECF No. 11-8 [hereinafter Superior Court Order].

Sadler argued in his appeal to the superior court that he was terminated because of his age. The superior court specifically considered Ayer's comment that he transferred Sadler because he was old and the building was large. *Id.* at 2 & n.1. The court assumed without deciding that Ayer's decision to transfer Sadler to the ISS position was discriminatory. *Id.* at 6. Despite this assumption, however, the court found that "there was evidence before the Board that could support a decision that Dr. O'Dell did not act with any discriminatory animus when she made the budget recommendations which included change to the ISS position." *Id.* Further, "[t]here was no evidence of discriminatory comments by Dr. O'Dell, [and] the selection of the younger individual[,] [Dr. Macomson,] occurred

before the events related to budget reductions." *Id.* The superior court noted that Sadler argued in the Fair Dismissal Act Hearing "that the sequence of events revealed the 'real' reason for the change in the ISS position was age discrimination." *Id.* According to the superior court, the Local Board "could have, but did not, accept the allegation of age discrimination." *Id.* The superior court concluded that it could not substitute its judgment for that of the Local Board. *Id.* The superior court acknowledged Sadler's argument to the Local Board that "the decision to transfer was 'inextricably intertwined' with the decision to terminate him." *Id.* at 6 n.3. Again, the superior court observed that "the Board could have, but apparently did not, draw [sic] such a connection." *Id.* The court found that "[t]here was no evidence of a concerted plan by the former superintendent and Dr. O'Dell to place Mr. Sadler in a position that was slated for elimination." *Id.* The superior court determined that "there was evidence in the record to support the decision of the Board of Education [and] that the Board was not compelled to find the Superintendent's decision was infected by age discrimination." *Id.* at 9. Thus, the Franklin County Superior Court affirmed the decision of the State Board of Education upholding the Local Board's termination of Sadler's contract. *Id.* at 10.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 19, 2007. Pl.'s Resp. to Def.'s Mot. for Summ J. [hereinafter Pl.'s Resp.] Ex. B, Charge of Discrimination, ECF No. 20-2. The EEOC issued Sadler a right-to-sue letter on January 20, 2010 that was received January 22, 2010. Pl.'s Resp. Ex. D, Notice of Right to Sue, ECF No. 20-4. Sadler filed this action on April 22, 2010. Compl., ECF No. 1.

DISCUSSION

FCSD argues that the judgment rendered by the Franklin County Superior Court affirming Sadler's termination for cause precludes Sadler's claim that FCSD terminated him because of his age. Sadler asserts that 28 U.S.C. § 1738—requiring that federal courts give full faith and credit to state court judgments—should not apply to ADEA cases. Sadler also argues that he was denied a full and fair opportunity to present his age discrimination claim in the state proceedings. The Court rejects both of Sadler's contentions and will address each of them in more detail in turn.

## I.  Application of 28 U.S.C. § 1738 to ADEA Cases

Under 28 U.S.C. § 1738, State "judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or

Possession from which they are taken." 28 U.S.C. § 1738. Accordingly, federal courts must "afford the same full faith and credit to state court judgments that would apply in the State's own courts." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 463 (1982). "[A]n exception to § 1738 will not be recognized unless a later statute contains an express or implied partial repeal." *Id.* at 468 (citing *Allen v. McCurry*, 449 U.S. 90, 99 (1980)). "It is, of course, a cardinal principle of statutory construction that repeals by implication are not favored." *Id.* (internal quotation marks omitted). The Supreme Court has determined that Congress did not intend to create an exception to § 1738's long-standing directive to federal courts when enacting Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), or 42 U.S.C. § 1983. *See Kremer,* 456 U.S. at 466-79 (concluding that in Title VII cases, § 1738 requires federal courts to give preclusive effect to state court judgments when courts from that state would do so); *Allen v. McCurry*, 449 U.S. 90, 95-105 (1980) (deciding that § 1738 applies in § 1983 actions and may bar federal courts from deciding constitutional claims previously litigated in state courts). Similarly, there is "no affirmative showing of a clear and manifest legislative purpose by Congress to create an exception to section 1738 for ADEA cases." *Nichols v. City of St. Louis*, 837 F.2d 833, 835 (8th Cir. 1988) (internal quotation

marks omitted); *accord Whitfield v. City of Knoxville*, 756 F.2d 455, 459-60 (6th Cir. 1985) (noting that "[n]othing in the ADEA evinces a Congressional intent that the rule set forth in § 1738 should not apply in age discrimination cases," but concluding that under state law claim was not precluded).

Sadler points the Court to no published court decision holding that an exception to § 1738 exists for ADEA claims. Instead, Sadler relies upon a strained interpretation of the Supreme Court's decision in *Astoria Federal Savings & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). A careful reading of *Solimino* actually yields a conclusion contrary to Sadler's argument. In *Solimino*, the Supreme Court considered whether state administrative decisions rejecting ADEA claims could preclude ADEA discrimination claims in federal court. The Court concluded that the ADEA "carries an implication that the federal courts should recognize no preclusion by state *administrative findings* with respect to age-discrimination claims." *Id.* at 110 (emphasis added). However, the Supreme Court in *Solimino* specifically distinguished the more limited presumption for applying common-law rules of preclusion to state administrative findings compared to the statutory mandate created by § 1738 requiring that federal courts respect state court judgments. *See id.* (noting the "presumption here is thus properly accorded sway only upon legislative default, applying where Congress has

failed expressly or impliedly to evince any intention on the issue."). The Court noted that "[w]e do not have before us the judgment of a state court, which would by law otherwise be accorded 'the same full faith and credit in every court within the United States . . . as [it has] by law or usage in the courts of such State.'" *Id.* at 109 (quoting 28 U.S.C. § 1738) (alterations in original). The Court reasoned that "[i]n the face of § 1738, we have found state-court judgments in the closely parallel context of Title VII . . . to enjoy preclusive effect in the federal courts." *Id.* Section 1738, however, was "inapplicable to the judicially unreviewed findings of state administrative bodies." *Id.* Unlike the facts presented in *Solimino,* there is before this Court a state court judgment which, as the Supreme Court recognized, is entitled to the full faith and credit of all federal courts, including this one. As can be readily seen, the Supreme Court's reasoning in *Solimino* supports, rather than contradicts, the Court's conclusion that § 1738 is applicable to the judgment of the Franklin County Superior Court at issue here.

Sadler next resorts to a policy argument that applying § 1738 to ADEA cases will deter plaintiffs from following the procedures outlined in the Fair Dismissal Act. Even if the Court found it appropriate to base its decision on policy considerations as opposed to traditional principles of statutory

interpretation, which it does not, Sadler's suggestion that those policy considerations support his position is dubious. As recognized by the Supreme Court, "stripping state court judgments of finality would be far more destructive to the quality of adjudication by lessening the incentive for full participation by the parties and for searching review by state officials" than any deterrent effect that might result from the application of § 1738. *Kremer*, 456 U.S. at 478; *see also Burney v. Polk Cmty. Coll.*, 728 F.2d 1374, 1379 (11th Cir. 1984) (finding "[t]he destructive effect of stripping state court judgments of finality is equally applicable to state court judgments affirming that a claim of employment discrimination is unproven made by a state administrative agency other than that expressly authorized to determine employment discrimination claims.").[2] Accordingly, the Court must give preclusive effect to the Franklin County Superior Court's judgment if a Georgia court would do so.

---

[2] Sadler contends that applying § 1738 in this case punishes him for waiting for the EEOC to conduct an investigation of his age discrimination claim. It is Sadler's decision to appeal his termination to the superior court, and not his decision to wait for the EEOC to conduct an investigation, that triggers the application of § 1738 to his ADEA claim. Accordingly, this argument is without merit.

## II. Collateral Estoppel Under Georgia Law

The Court must next evaluate whether Georgia's collateral estoppel rules preclude Sadler's claim. Georgia law provides that:

> A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.

O.C.G.A. § 9-12-40. "When collateral estoppel applies, the issue may not be relitigated even as part of a different cause of action." *Langton v. Dep't of Corr.*, 220 Ga. App. 445, 446, 469 S.E.2d 509, 510 (1996). "A judicial decision based upon administrative benefit hearings that determines the reasons for an employee's termination precludes relitigation of the causality issue in subsequent proceedings." *Shields v. BellSouth Adver. & Publ'g Corp.*, 273 Ga. 774, 778, 545 S.E.2d 898, 901 (2001); *accord Langton,* 220 Ga. App. at 446, 469 S.E.2d at 510 (denying plaintiff's claims based on collateral estoppel because "the superior court's determination that [plaintiff] was terminated for cause precludes her from relitigating the issue."). "In the arena of wrongful termination, the Georgia Court of Appeals has determined that collateral estoppel would bar relitigation of the reasons behind an employee's dismissal." *Shields*, 273 Ga. at 777, 545 S.E.2d at 901.

The Court concludes that under Georgia's collateral estoppel rules, Sadler's claim that FCSD terminated his employment because of his age is barred by the superior court's judgment affirming Sadler's termination for cause. At each stage of the proceedings, Sadler argued that his termination was the result of age discrimination and was not part of a lawful RIF. The Board determined that cause existed to terminate his employment despite Sadler's allegations, and the State Board and the Franklin County Superior Court reviewed and affirmed that conclusion. Therefore, this Court cannot revisit the reasons behind Sadler's termination because a Georgia court would not do so.

Further, "[i]t is well established that judicial affirmance of an administrative determination is entitled to preclusive effect . . . [and] [t]here is no requirement that judicial review must proceed *de novo* if it is to be preclusive." *Gorin v. Osborne*, 756 F.2d 834, 837 (11th Cir. 1985) (quoting *Kremer*, 456 U.S. at 480 n.21) (first alteration in original). Accordingly, the superior court's review of the Local Board's decision under the "any evidence" standard does not deprive the judgment of its preclusive effect. The Court finds that Sadler's claim that FCSD terminated his employment because of his age is barred by collateral estoppel under Georgia law.

### III. Sadler's Full and Fair Opportunity to Litigate His Age Discrimination Claim

Finally, the Court must evaluate whether Sadler had a full and fair opportunity to litigate his claim of age discrimination. *See Kremer*, 456 U.S. at 480 ("[C]ollateral estoppel does not apply when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate the claim or issue.") (internal quotation marks omitted). Where a federal court is "bound by the statutory directive of § 1738, state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law." *Id.* at 481.

Sadler utilized the procedures set out in the Fair Dismissal Act to contest his termination. The Fair Dismissal Act of Georgia "provide[s] all of the due process that is constitutionally required." *Sharpley v. Davis*, 786 F.2d 1109, 1112 (11th Cir. 1986); *see also* O.C.G.A. § 20-2-940 to O.C.G.A. § 20-2-947 (effective until Jan. 1, 2013) (outlining procedures that must be followed before a teacher, principal, or other employee that has a contract for a definite term can be terminated). Further, at the Fair Dismissal Act Hearing, Sadler was represented by counsel, had the opportunity to cross-examine witnesses, and presented evidence in support of his age

discrimination claim. Sadler obtained review of the Local Board's decision by following the appeal procedures provided by O.C.G.A. § 20-2-1160.

Sadler asserts that he was denied a full opportunity to pursue his age discrimination claim in the Fair Dismissal Act Hearing. Sadler contends that the Hearing Officer at the Fair Dismissal Act Hearing made several erroneous evidentiary rulings and did not allow a particular line of questioning on cross-examination, so he was "consistently blocked" from presenting his age discrimination claim. The record reveals that the Hearing Officer weighed Sadler's arguments regarding the relevancy of the evidence and the questioning on cross-examination but made rulings that were unfavorable to Sadler. The Hearing Officer determined that the evidence offered by Sadler and the questions on cross-examination did not actually demonstrate discrimination, but the Hearing Officer did not stop Sadler from presenting evidence he found relevant to Sadler's discrimination claim or from performing cross-examination relevant to discriminatory animus. *See* Fair Dismissal Act Hr'g Tr. 91:12-92:17, 93:4-9, 131:9-13. Throughout the Fair Dismissal Act Hearing Sadler introduced evidence related to his age discrimination claim. Further, under O.C.G.A. § 20-2-940(e)(4), Sadler had the opportunity to appeal the Hearing Officer's evidentiary rulings to the full

local board or hearing tribunal. O.C.G.A. § 20-2-940(e)(4).[3] Although Sadler argues that he should have been able to pursue his claim in accordance with FCSD's policy for investigating discrimination, Sadler received a Fair Dismissal Act Hearing regarding his termination that complied with due process. Finally, the superior court's review of the Local Board's decision under the "any evidence" standard did not deprive Sadler of a full and fair opportunity to litigate his claim. *See Gorin*, 756 F.2d at 838 (finding no due process violation deriving from the "any evidence" standard of review applied by the state court). The Court concludes that the "panoply of procedures" afforded to Sadler under the Fair Dismissal Act, "complemented by administrative as well as judicial review, is sufficient under the Due Process Clause." *Kremer*, 456 U.S. at 484.

In summary, § 1738 requires that this Court give preclusive effect to the Franklin County Superior Court's judgment affirming Sadler's termination. Sadler had a full and fair

---

[3] Sadler also argues that the Hearing Officer erroneously admitted an offer to compromise into evidence by admitting O'Dell's offer to Sadler to co-teach special education after she initiated the termination proceedings. Although Sadler argues this evidence was inadmissible, he offers no explanation as to why the admission of this evidence violated his right to due process. Sadler argued that the evidence was inadmissible in the superior court and the court did "not find that admission of the evidence of the offer was an abuse of discretion." Superior Court Order 9. Again, the Court is precluded from revisiting this issue.

opportunity to present his argument that his termination resulted from age discrimination in the state administrative proceedings and in the superior court. He lost. Under collateral estoppel principles, he does not get a second chance to fight that battle. This Court must give that state court judgment the full faith and credit that it deserves and that the statute requires. Accordingly, FCSD is entitled to summary judgment.

CONCLUSION

Based on the foregoing, FCSD's Motion for Summary Judgment (ECF No. 11) is granted.

IT IS SO ORDERED, this 3rd day of August, 2011.

S/Clay D. Land
_____
CLAY D. LAND
UNITED STATES DISTRICT JUDGE